IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HUNTINGDON RIDGE TOWNHOUSE ) <br> HOMEOWNERS ASSOCIATION, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> QBE INSURANCE CORPORATION, ) <br> et al., ) <br> ) <br> Defendants. ) | Case No. 3:09-cv-00071 <br> Judge Trauger |

## MEMORANDUM

Plaintiff Huntingdon Ridge Townhouse Homeowners Association, Inc. ("Huntingdon Ridge") and defendant QBE Insurance Corp.[1] ("QBE") have filed cross-motions for summary judgment. Pending before the court is the plaintiff's Motion for Summary Judgment (Docket No. 19), the defendant's response thereto (Docket No. 22), the defendant's Motion for Summary Judgment (Docket No. 18), and the plaintiff's response thereto (Docket No. 20). For the reasons discussed below, the plaintiff's motion will be denied and the defendant's motion will be granted.

## FACTS

This case arises out of structural damage to townhouses in the plaintiff's residential

---

[1] The plaintiff has settled with the other named defendant, Firstline National Insurance Co. Accordingly, "defendant" will refer solely to QBE.

1

development.[2]  The plaintiff, a homeowners association, claims that the damage is covered by an insurance policy issued by the defendant.

## I. Background

Michael Lloyd Meier and Lisa Ann Meier own a unit in Huntingdon Ridge, a development of several townhouses in Davidson County, Tennessee.  In the spring of 2004, the Meiers' neighbor discovered that structural defects in her unit had caused the walls to deflect and the floors to sag.  The neighbor notified Huntingdon Ridge, which initially took responsibility for the repairs and obtained bids from contractors.  In January 2006, the Meiers noticed similar problems in their townhouse.  They notified the plaintiff, but the plaintiff disputed that it was responsible for the cost of repairs.

The Meiers hired a structural engineer, who found that the property's structural defects related to floor trusses, which are part of the building's foundation and bearing wall system.  The engineer found that the floor truss system had been improperly handled and installed during the building's initial construction.  He also found that the trusses were defective.  As a result, the floor trusses were progressively failing; if left unrepaired, this would eventually cause the building to collapse.

---

[2] Unless otherwise noted, the facts are drawn from the plaintiff's Statement of Undisputed Facts (Docket No. 19, Ex. 2), the defendant's response thereto (Docket No. 21), the defendant's Statement of Material Facts not in Dispute (Docket No. 18, Ex. 1), and the plaintiff's response thereto (Docket No. 21), and related affidavits and exhibits.  Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

In September 2006, the Meiers filed a Complaint for Declaratory Judgment against Huntingdon Ridge in the Circuit Court for Davidson County, requesting that the court declare that Huntingdon Ridge was obligated to repair their townhouse. On September 5, 2007, the state court issued an order finding that the floor trusses were an integral part of the foundation and were thus "common elements" under the association bylaws and covenants, which required Huntingdon Ridge to pay for repairs to "common elements." Huntingdon Ridge appealed, but the Tennessee Court of Appeals affirmed the ruling. *Meier v. Huntington Ridge Townhouse Homeowners Ass'n*,[3] No. M2007-02511-COA-R3-CV, 2008 Tenn. App. LEXIS 635 (Tenn. Ct. App. Oct. 23, 2008).

Huntingdon Ridge had a condominium association insurance policy from insurer QBE. It filed a claim for the cost of the repairs, but QBE denied the claim. The plaintiff then filed the instant suit, seeking a declaratory judgment that its repair expenses are covered by the policy.

Huntingdon Ridge also claims that the policy covers floor truss repairs to a second townhouse, which was acquired by the United States through a forfeiture action. On October 28, 2008, the United States filed a federal suit against Huntingdon Ridge in the Middle District of Tennessee, alleging that the townhouse had structural damage relating to defective floor trusses and seeking to have Huntingdon Ridge pay for the repairs. The case, *United States v. Huntington Ridge Townhouse Homeowners' Ass'n, Inc.*, No. 3:08-cv-01042, was voluntarily dismissed on November 12, 2009.

---

[3] Captions in related cases spell the plaintiff's name "Huntington," with a "t," whereas the parties here consistently spell it "Huntingdon."

3

**B.      Relevant Policy Language**

The insurance policy at issue states that QBE will pay for "direct physical loss of or damage to 'covered property' caused by" certain enumerated covered causes of loss. (Docket No. 1, Ex. 6 ¶ I..) "Covered causes of loss . . . means immediate and direct physical loss or damage to 'covered property.'" (*Id.* ¶ III.A.) The policy also provides a number of explicit exclusions to coverage.

The plaintiff claims that the townhouses are in a state of collapse. The contract defines "collapse" as:

> [A]n abrupt falling down, caving in or flattening of a building, structure, or of any part of a building or structure with the result that the building, structure or collapsed part of either cannot be occupied for its intended purpose. However:
>
> a. A building, structure or any part of either that is in danger of falling down or caving in is not considered to be in a state of collapse. This provision applies even if the building has been:
>
>   (1) Declared by civil authority or by a person technically qualified to do so to be in an imminent state of collapse;
>
>   (2) Condemned for occupancy for its intended purpose; or,
>
>   (3) Ordered evacuated in anticipation of imminent collapse.
>
> b. A part of a building or structure that is standing is not considered to be in a state of collapse even if it has separated from another part of the building or structure.
>
> c. None of the following is considered to be in a state of 'collapse' even if it shows evidence of cracking, bulging,

sagging, bending, leaning, settling, shrinkage or expansion:

    (1)    A building, structure or part of either that is standing; or

    (2)    Personal property.

(*Id.* ¶ XXVIII.11.) The exclusions section generally excludes coverage for "collapse." (*Id.* ¶ III.B.2.(d).) But the contract does provide coverage for several specific types of collapse:

> IV. PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION
>
> A. "COLLAPSE" COVERAGE
>
> 1. We will pay for direct physical loss or damage to "covered property" if the "collapse" is caused by one or more of the following:
>
>    a. The "Specified Causes of Loss" or breakage of structural glass, all only as insured against in this Property Coverage Part;
>
>    b. Decay that is hidden from view, unless the presence of such decay is known to anyone acting on your behalf prior to collapse;
>
>    c. Insect or vermin damage that is hidden from view, unless the presence of such decay is known to anyone acting on your behalf prior to collapse;
>
>    d. Weight of people or personal property;
>
>    e. Weight of rain that collects on a roof;
>
>    f. Use of defective materials or methods in construction, remodeling or renovation if the "collapse" occurs during the course of the construction, remodeling or renovation. However, if the "collapse" occurs after construction, remodeling or renovation is complete and is caused

5

in part by a cause of loss listed in A.1.a. through A.1.e. above, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation contributes to the collapse.

(*Id.* ¶ IV.A.)

The policy provides a number of general exclusions from coverage:

> B.  EXCLUSIONS . . .
>
> 2.  We will not pay for loss or damage caused by or resulting from any of the following:
>
>     b.  MATERIAL FACTORS
>
>         (1)  Wear and tear;
>
>         (2)  Rust, corrosion, decay, contamination or deterioration.
>
>         (3)  Latent defect, innate or inherent vice or any quality in the property that causes it to damage or destroy itself.
>
>         (4)  Settling, cracking, bulging, shrinking or expanding. . . .
>
> 3.  ACTS OR OMISSIONS
>
> We will not pay for loss or damage caused by or resulting from any of the following: . . .
>
>     b.  Faulty, inadequate, defective, or negligent: . . .
>
>         (2)  Design, testing, specifications, workmanship, repair, construction, renovation, remodeling, grading, earth compaction;
>
>         (3)  Materials used in repair, construction,

6

<blockquote>renovation or remodeling.</blockquote>

(*Id.* ¶ III.B.)

The insurance contract also provides directors and officers liability coverage:

> XXI. DIRECTORS AND OFFICERS LIABILITY COVERAGES SECTION
>
> This insurance covers all sums that the insured becomes legally obligated to pay for "loss" to which this insurance applies. . . .
>
> A. ERRORS AND OMISSIONS INSURANCE
>
> We will pay on behalf of the insured all "loss" such insured becomes legally obligated to pay as damages because of a "wrongful act" committed in the "coverage territory." . . . We may investigate any "claim" or "suit" at our discretion.

(*Id.* ¶ XXI.) "Wrongful act" is defined as "any error, misstatement or misleading statement, act or omission, attempted, or allegedly committed or attempted, by any insured in the discharge of duties to you, or any matter claimed solely by reason of service in such capacity." (*Id.* ¶ XXVIII.93.) A "claim" is defined as a "written demand, sent by a person or organization, demanding either damages or the performance of a specific act, or both." (*Id.* ¶ XXVIII.10.) A "suit" is defined as "a civil proceeding in which damages or nonpecuniary relief to which this insurance applies are alleged," including a "civil proceeding commenced by the service of a complaint or similar pleading." (*Id.* ¶ XXVIII.76.) "Loss" is defined as "the damages the insured is legally obligated to pay because of judgment or settlements arising out of 'claims' or 'suits' alleging 'wrongful acts.'" (*Id.* ¶ XXVIII.10.)

The contract provides certain exclusions for the director and officers liability coverage:

> XXII. DIRECTORS AND OFFICERS LIABILITY

7

> EXCLUSIONS SECTION
>
> This insurance does not apply to any "claim" or "suit": . . . .
>
> K. INJURY AND DAMAGE
>
> Where all or part of such "claim" is directly or indirectly, based on, attributable to, caused by, arising out of, resulting in or relating in any way to "bodily injury," "property damage," "personal injury" or "advertising injury."

(*Id.* ¶ XXII.) The contract defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." (*Id.* ¶ XXVIII.65.)

Finally, the contract includes a provision that, in the event of loss or damage to its property, the insured must "[t]ake all reasonable steps to protect the 'covered property' from further damage." (*Id.* ¶ VI.I.8.)

## **ANALYSIS**

Huntingdon Ridge seeks a declaratory judgment that QBE is obligated to indemnify it for money spent repairing the structural damage to the townhouses. Both parties have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

**I.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's

8

claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for

summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.     Collapse Coverage

The plaintiff argues that the townhouses are in a state of collapse and that this damage is covered by the QBE policy. (Docket No. 19, Ex. 1 at 11-13.) The defendant claims that the floor truss damage falls under the policy's exclusions. (Docket No. 18, Ex. 2 at 6-9.)

The plaintiff's policy does not contain a choice-of-law provision. In diversity cases, a federal court should apply the choice-of-law rules of the forum state. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). Tennessee courts apply the substantive law of the state where an insurance policy was issued and delivered. *NGK Metals Corp. v. Nat'l Union Fire Ins. Co.*, No. 1:04-cv-56, 2005 U.S. Dist. LEXIS 40603, at *11-12 (E.D. Tenn. Apr. 29, 2005). The policy here was issued and delivered in Tennessee, so the court will apply Tennessee law.

Tennessee law requires courts to "construe insurance contracts in the same manner as any other contract." *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). The policy language "must be taken and understood in its plain, ordinary and popular sense." *Id.*; *Alcazar v. Hayes*, 982 S.W.2d 845, 848 (Tenn. 1998). But if the language is susceptible of more than one reasonable interpretation, it is ambiguous, and it should be construed against the insurance company. *Hutchison*, 15 S.W.3d at 815. Furthermore, exclusionary clauses should be strictly construed against the insurer. *Lineberry v. State Farm Fire & Casualty Co.*, 885 F. Supp.

10

1095, 1098 (M.D. Tenn. 1995).

As an initial matter, the property damage here does not fall under the definition of "collapse" listed in the policy, which requires an "abrupt falling down, caving in or flattening of" the insured property. (Docket No. 1, Ex. 6 ¶ XXVIII.11.) The plaintiff argues that Tennessee law requires a definition of "collapse" that includes damage which, if left untreated, will eventually cause the building to fall down. The Tennessee Court of Appeals has indeed adopted the majority rule that collapse coverage provisions "which define collapse as not including cracking and settling . . . provide coverage if there is substantial impairment of the structural integrity of the building or any part of a building." *Rankin v. Generali-U.S. Branch*, 986 S.W.2d 237, 238 (Tenn. Ct. App. 1998) (citation omitted).

But even assuming that the plaintiff's property is in a state of collapse, the policy here still does not provide coverage. The insurance policy only covers collapses resulting from a specific set of causes, including decay, insect damage, heavy personal property, and rainwater. (Docket No. 1, Ex. 6 ¶¶ IV.A.1.(a)-(f).) The plaintiff alleges that the floor trusses are defective and that the damage was caused by the improper handling and installation of the trusses.[4] Although the policy does cover collapse caused by "[u]se of defective materials or methods in construction," this only applies "if the 'collapse' occurs during the course of the construction."

---

[4] In its brief, the plaintiff states: "In this instance, the Holiday House suffered a 'collapse'; further, the collapse occurred because of hidden decay and as was caused [sic] by a 'specified cause of loss' a defined term which specifically includes 'water damage.'" (Docket No. 19, Ex. 1 at 13.) This isolated statement is puzzling, because no building called "the Holiday House" is at issue in this case, and the plaintiff has not alleged that decay or water damage caused the damage to the floor trusses.

11

(*Id.* ¶ IV.A.1.(f).) That did not happen here. Furthermore, the insurance policy generally excludes coverage for any "latent defect . . . in the property that causes it to damage or destroy itself" (*Id.* ¶ III.B.2.b.(3)), or for any "faulty [or] defective . . . construction" or "[m]aterials used in . . . construction." (*Id.* ¶¶ III.B.3.b.(2)-(3).) The court finds that these clauses preclude coverage for the faulty floor trusses.[5]

## III. Directors and Officers Liability Coverage

The plaintiff also argues that the policy's directors and officers liability clauses provide indemnity for losses resulting from the state court declaratory judgment.[6] (Docket No. 19, Ex. 1 at 17-20.) That judgment found that the floor trusses were a "common element," such that Huntingdon Ridge was responsible under its covenants and bylaws for repairing them. (Docket No. 19, Ex. 3 at 8.)

The directors and officers liability provision covers "all 'loss' [the] insured becomes legally obligated to pay as damages because of a 'wrongful act.'" (Docket No. 1, Ex. 6 ¶ XXI.A.) It further provides that "[t]his insurance does not apply to any 'claim' or 'suit': . . . Where all or part of such 'claim' is directly or indirectly, based on, . . . arising out of . . . or relating in any way to . . . 'property damage." (*Id.* ¶¶ XXII, XXII.K.) "Property damage" is defined as "[p]hysical injury to tangible property." (*Id.* ¶ XXVIII.65.)

Clearly, the state court declaratory judgment action was related to property damage – it

---

[5] This also disposes of the plaintiff's argument that QBE's denial of coverage was in bad faith. (*See* Docket No. 19, Ex. 1 at 14-16.)

[6] The plaintiff does not argue that the directors and officers liability coverage is implicated by the federal suit filed by the United States.

12

dealt with physical damage to the townhouse's floor truss system. Huntingdon Ridge argues that the property damage exclusion, by its terms, only applies to "claims," and not "suits"; because the state court action was a "suit," it is not covered by the exclusion. (Docket No. 19, Ex. 1 at 20.) It is true that Paragraph K of the relevant exclusions section states: "Where all or part of such 'claim' is [based on property damage]." (Docket No. 1, Ex. 6 ¶ XXII.K.) But this is a sentence fragment, and it does not make sense unless it is read in conjunction with the relevant antecedent language. That antecedent language states that the exclusion applies to "any 'claim' or 'suit.'" (*Id.* ¶ XXII.) The court finds that the property damage exclusion unambiguously applies to both "claims" and "suits." QBE is thus not obligated to indemnify the plaintiff for losses related to the state court action.

Furthermore, the state court issued a declaratory judgment – it did not award damages. The directors and officers liability coverage only applies to losses that the insured "becomes legally obligated to pay *as damages* because of a 'wrongful act.'" (Docket No. 1, Ex. 6 ¶ XXI.A (emphasis added).) The policy defines "loss" as "the *damages* the insured is legally obligated to pay because of judgment." (*Id.* ¶ XXVIII.10 (emphasis added).)

The policy does not define "damages." But "in the insurance context, the term 'damages' has acquired the plain and ordinary meaning of legal damages." *Cedar Chem. Corp. v. Am. Universal Ins. Co.*, No. 87-2838-4B, 1989 U.S. Dist. LEXIS 19143, at *8 (W.D. Tenn. Sept. 13, 1989) (applying Tennessee law). "'Damages,' as distinguished from claims for injunctive or restitutionary relief, includes only payments to third persons when those persons have a legal claim for damages." *Md. Cas. Co. v. Armco, Inc.*, 822 F.2d 1348, 1352 (4th Cir. 1987) (citation

13

omitted); *see also* Black's Law Dictionary (8th ed. 2004) (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). In *City of Sandusky v. Coregis Insurance Co.*, 192 Fed. Appx. 355 (6th Cir. 2006), the policy at issue defined "damages" as "monetary sums[,] . . . exclud[ing] all forms of injunctive relief and *declaratory judgments*." *Id.* at 360 (emphasis added). The Sixth Circuit stated that this was broader than "the classic legal definition of the term." *Id.* at 361. Similarly, the Fourth Circuit has held that the phrase "'all sums which the insured shall become legally obligated to pay as damages'" – which is identical to the language in QBE's policy – "would not cover claims for which the insured is equitably obligated to pay." *Cincinnati Ins. Co. v. Milliken & Co.*, 857 F.2d 979, 981 (4th Cir. 1988), *cited in Terminix Int'l Co. v. Md. Cas. Co.*, No. 88-2186-4B, 1991 U.S. Dist. LEXIS 21845, at *5-6 (W.D. Tenn. Mar. 7, 1991); *see also H.L. Libby Corp. v. Fireman's Fund Ins. Co.*, No. 2:03cv601, 2006 U.S. Dist. LEXIS 50433, at *11-13 (W.D. Pa. July 24, 2006) (finding that "damages" unambiguously refers to monetary damages); *Armco*, 822 F.2d at 1353 (distinguishing damages from "liabilities arising out of 'legal'. . . proceedings.").

Here, the state court did not award damages to the Meiers. Although Huntingdon Ridge might have incurred repair costs as a result of the declaratory judgment, those costs are not "damages." Accordingly, the court finds that the insurance policy does not cover those expenses.[7]

## **CONCLUSION**

---

[7] Because Huntingdon Ridge's claims are not covered, the court does not need to address the parties' arguments regarding whether the events occurred within the policy period.

14

For all the reasons discussed above, the court will deny Huntingdon Ridge's Motion for Summary Judgment and grant QBE's Motion for Summary Judgment.

An appropriate order will enter.

                                                                               ALETA A. TRAUGER
                                                                              United States District Judge